## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| | * | CASE NO. 19-34698 (DRJ) |
| | * | |
| KP ENGINEERING, LP, *et al*[1] | * | |
| | * | (Jointly Administered) |
| *Debtor* | * | |

**LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, RULE 3007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND THE TERMS OF THE PLAN SEEKING TO DISALLOW AND EXPUNGE CLAIM NUMBER 56 FILED BY CREDOS INDUSTRIAL SUPPLIES & RENTALS LLC[2]**

---

**THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THESE BANKRUPTCY CASES. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

**NOW INTO COURT**, through undersigned counsel, comes Michael D. Warner, solely in his capacity as liquidation trustee for the KP Engineering Liquidation Trust (the "***Trust***"), (the "***Liquidation Trustee***") who, pursuant to 11 U.S.C. § 502(b), Rule 3007 of the Federal Rules of Bankruptcy Procedure and the terms of the Plan, files this objection ("***Objection***") to Proof of Claim Number 56 filed by Credos Industrial Supplies & Rentals LLC d/b/a Credos Fabrications,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are KP Engineering, LP (7785) and KP Engineering, LLC (0294).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 5555 Old Jacksonville Hwy., Tyler, TX 75703.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

LLC ("*Credos*") (the "*Claim*" or "*Claim No. 56*", a copy of which has been obtained from Omni (as defined herein) and is attached hereto as **Exhibit** "**A**") on the basis that Credos' claim should be reduced by: (1) any interest included in the Claim to which it is not entitled and/or authorized by the Court; and (2) any attorneys' fees and costs included in the Claim for which it has no legal basis and/or is not determined by the Court to be reasonable under applicable law.  The Liquidation Trustee requests entry of an order, in substantially similar form to the proposed order attached hereto as **Exhibit** "**B**" (the "*Proposed Order*"), (1) disallowing and expunging the Claim in any amount beyond $930,507.76[3] (notwithstanding any interest, attorneys' fees and/or costs approved by the Court after considering the issues raised herein); and (2) requiring Credos to report to the Liquidation Trustee and reduce the Claim by any and all additional sums received in satisfaction of the Claim after entry of any order allowing or disallowing the Claim, in part or full, until the termination of the Trust. In support thereof, the Liquidation Trustee submits the *Declaration of Michael D. Warner, Liquidation Trustee, in Support of Liquidation Trustee's Objection to Claim Pursuant to Section 502(b) of the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure and the Terms of the Plan Seeking to Disallow and Expunge Claim Number 56 filed by Credos Industrial Supplies & Rentals LLC*  (the "*Declaration*", attached hereto and incorporated herein as **Exhibit** "**C**") and represents as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157(b) and 1334 and Article XI of the Plan, and the subject matter of the Objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

---

[3] The Claim ($1,004,471.83) - $53,229.63 - $20,734.44.

2.     Venue of this case and the Objection is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and rule-based predicates for the relief sought herein are section 502(b) of Title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

3.     The Liquidation Trustee is authorized to file this Objection pursuant to the *Third Amended Joint Chapter 11 Plan of Reorganization of KP Engineering, LP and KP Engineering, LLC* (the "***Plan***")[4] and the Liquidation Trust Agreement (the "***Trust Agreement***")[5], both of which were confirmed by the Court's *Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of KP Engineering, LP and KP Engineering, LLC* (the "***Confirmation Order***").[6]

**PRE-PETITION BACKGROUND**

---

[4] Article VII(A)(2) of the Plan authorizes the Liquidation Trustee, "[e]xcept as otherwise specifically provided in the Plan or the [Trust Agreement]", to, *inter alia*, "with respect to all Claims in Class 3 [Allowed Other Secured Claims], 4 [Allowed Johnson Creditor Claims – exclusive standing], 5 [Allowed Channelview Creditor Claims – exclusive standing], 6 [Allowed Geismar VI Creditor Claims – exclusive standing], and 7 [Allowed General Unsecured Claims – exclusive standing]], . . . file, withdraw, or litigate to judgment, objections to Proofs of Claims."

[5] Article 1, Section 1.2(c) of the Trust Agreement provides that "[o]n the Effective Date, the Liquidation Trust shall stand in the shoes of the Debtors for all purposes with respect to . . . (ii) the claims reconciliation process for Claims in Classes 4, 5, 6 and 7.  For clarity, (x) deficiency claims, if any, of holders of Claims in Classes 3, 4, 5 and 6, will be treated as Claims in Class 7, and subject to the Claims objection process provided in Section 6.3 hereof; (y) the Liquidation Trustee shall have no duty or obligation to address distributions on or to, or allowances of the Claims in Class 3 (other than with respect to any deficiency Claim within Class 7), as such duty and obligation shall be undertaken by the Debtors or the Reorganized Debtors, as applicable." Article 3, Section 3.6(d) of the Trust Agreement provides that "[s]ubject to any limitations contained herein, in the Plan, or the Confirmation Order, the Liquidation Trustee shall have the following powers and authorities on behalf of the Liquidation Trust: . . . without the need for [the Court's] approval, to investigate, object to, subordinate, compromise, estimate, allow, settle, or abandon any Claims in Classes 4, 5, 6, and 7."

[6] Case Number 19-34698, Doc. No. 575.

4.     Prior to the Petition Date (as that term is defined herein), Credos and KPE LP (as that term is defined herein) entered into a Subcontract Agreement (the "***Agreement***")[7], wherein Credos was to provide certain mechanical installation services to KPE LP under job number J1711 on a T&M basis.[8]

5.     According to the Debtors' records, KPE LP issued a Purchase Order and several Purchase – Change Orders; however, none of these documents appear to be signed by Credos.[9]

6.     On or about July 10, 2018, Credos issued to KPE LP Invoice No. 200-2.17 in the amount of $184,473.25 ("***Invoice No. 1***").[10]

7.     On or about July 17, 2018, Credos issued to KPE LP Invoice No. 200-2.18 in the amount of $225,864.25 ("***Invoice No. 2***").[11]

8.     On or about July 24, 2018, Credos issued to KPE LP Invoice No. 200-2.19 in the amount of $206,542.01 ("***Invoice No. 3***").[12]

---

[7] The Agreement is attached hereto as **Exhibit "D."** The date of the Agreement between the parties is somewhat uncertain, as "Page A" notes the Agreement was "made this 19th day of March" but indicated no year (one can only presume 2018), while the date listed under the subcontractor's (i.e., Credos') signature is July 10, 2018. *See* Exhibit "D", pgs. 2, 4 of 11.

[8] *See id.*, pg. 2 of 11. *See also id.*, pg. 4 of 11, §§ 2.2, 3.1.

[9] The Purchase Order and Purchase – Change Orders are attached hereto as **Exhibit "E."** Notably, the Purchase Order contains the following clause "*Supplier ("Seller") is to sign and date this purchase order in the space provided below acknowledging acceptance of this order and all attachments. The original signed purchase order must be returned to lparsons@kpe.com KP Engineering LP takes it as agreement for the content in its entirety unless we receive objection within ten (10) business days after receipt of order.*" *See* Exhibit "E", pg. 1 of 7 (emphasis in original). The Purchase – Change Orders contain a similar clause stating "*Supplier ("Seller") is to sign and date this purchase change order in the space provided below acknowledging acceptance of this change order and all attachments. The original signed purchase change order must be returned to lparsons@kpe.com KP Engineering LP takes it as agreement for the content in its entirety unless we receive objection within ten (10) business days after receipt of change order.*" *See id.*, pgs. 2-5, 7 of 7 (emphasis in original).

[10] *See* Exhibit "A", pg. 5 of 21.

[11] *Id.*, pg. 6 of 21.

[12] *Id.*, pg. 7 of 21.

9.      On or about July 31, 2018, Credos issued to KPE LP: (1) Invoice No. 200-2.20 in the amount of $182,448.00 ("***Invoice No. 4***");[13] (2) Invoice No. 200-3.1 in the amount of $20,360.00 ("***Invoice No. 5***")[14]; (3) Invoice No. 200-3.2 in the amount of $1,212.00 ("***Invoice No. 6***")[15]; (4) Invoice No. 200-3.3 in the amount of $675.00 ("***Invoice No. 7***")[16]; (5) Invoice No. 200-3.4 in the amount of $838.00 ("***Invoice No. 8***")[17]; (6) Invoice No. 200-3.5 in the amount of $1,105.00 ("***Invoice No. 9***")[18]; (7) Invoice No. 200-3.6 in the amount of $1,782.50 ("***Invoice No. 10***")[19]; and (8) Invoice No. 200-3.7 in the amount of $647.50 ("***Invoice No. 11***").[20]

10.     On or about August 7, 2018, Credos issued to KPE LP (1) Invoice No. 200-2.21 in the amount of $102,090.25 ("***Invoice No. 12***")[21]; and (2) Invoice No. 200-3.8 in the amount of $2,470.00 ("***Invoice No. 13***")[22] (collectively, Invoices 1 through 13 are referred to herein as the "***Invoices***").

11.     The Invoices collectively total $930,507.76.

12.     On August 24, 2018, that certain case number CV54856 styled *Hancock Mechanical, LP, et al v. KP Engineering, LP and Targa Pipeline Mid-Continent WestTex, LLC, et al* was commenced in the 238th Judicial District Court, Midland County, Texas (the "***Johnson***

---

[13] *Id*., pg. 8 of 21.

[14] *Id*., pg. 10 of 21.

[15] *Id*., pg. 11 of 21.

[16] *Id*., pg. 12 of 21.

[17] *Id*., pg. 13 of 21.

[18] *Id*., pg. 14 of 21.

[19] *Id*., pg. 15 of 21.

[20] *Id*., pg. 16 of 21.

[21] *Id*., pg. 9 of 21.

[22] *Id*., pg. 17 of 21.

*Litigation*") related to KPE LP's design and construction of a 200MM cf/day gas cryogenic plant for Targa Pipeline Mid-Continent Westtex LLC's ("***Targa***") (the "***Johnson Project***"). Credos appears to have been an active participant in the Johnson Litigation since at least November 14, 2018 when it filed its answer, counterclaim, crossclaim and request for declaratory judgment.[23]

13.     On or about September 24, 2018, Credos filed document number 2018-27643 into the Midland County Texas public records (the "***Lien***"), therein asserting a $930,507.76 lien against the Johnson Project (the "***Lien Amount***").[24]

## POST-PETITION BACKGROUND

14.     On August 23, 2019 (the "***Petition Date***"), KP Engineering, LP ("***KPE LP***") and KP Engineering, LLC (together, the "***Debtors***") filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***").[25]   KPE LP was assigned Case Number 19-34698 and KP Engineering, LLC was assigned Case Number 19-34699.[26]   The two bankruptcy cases were subsequently consolidated for procedural purposes only and have since been jointly administered under Case Number 19-34698 (the "***Bankruptcy Case***").[27]   Since the Petition Date, the Debtors operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[23] Adversary Proceeding Number 19-03707, Doc. No. 1, Exhibit 1, Pg. 5 of 24. *See also id.*, Doc. No. 285, Exhibit 1.

[24] Adversary Proceeding Number 19-03707, Doc. No. 231.

[25] Case Number 19-34698, Doc. No. 1; Case Number 19-34699, Doc. No. 1.

[26] *Id.*

[27] Doc. No. 39.

15.     Pursuant to the Court's August 26, 2019 Order, the Debtors employed and retained Omni Agent Solutions ("**Omni**") as claims and noticing agent.[28]

16.     The Court designated the Bankruptcy Case a complex chapter 11 case on August 26, 2019, and therefore required compliance with the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* (the "**Complex Case Rules**").[29]  Pursuant to the Complex Case Rules[30], February 19, 2020 (the "**Governmental Claim Bar Date**") was the deadline by which governmental units were to file any proofs of claim[31] while January 13, 2020 (the "**Claim Bar Date**") was the deadline by which all other entities were to file any proofs of claim.[32]

17.     On December 17, 2019, the Johnson Litigation was referred to the Court, which Adversary Proceeding Number 19-03707 (the "**Johnson Adversary**") remains pending before the Court as of the filing of the instant objection.[33]

18.     Within the Johnson Adversary, Targa interpleaded approximately $10 million in retainage (the "**Retainage**") that Targa contended should be distributed among some or all of more than thirty subcontractor third-party defendants who filed lien claims.

---

[28] Case Number 19-34698, Doc. No. 40.

[29] Case Number 19-34698, Doc. No. 41.  Pursuant to Local Rule 3003-1, "in . . . chapter 11 cases, unless otherwise ordered by the court or governed by BLR 3003-1(b), proofs of claim and proofs of interest must be filed within 90 days after the first date set for the meeting of creditors under section 341(a), except that a proof of claim filed by a governmental unit must be filed within 180 days after the order for relief."  However, such Local Rule provides that it "does not apply to chapter 11 cases that (1) are ordered treated as complex cases, or (2) transferred from another judicial district."

[30] "Unless a different date is subsequently ordered by the Court, the bar date for the filing of proofs of claim and proofs of interest is (i) 180 days after the petition date for governmental units; and (ii) for all other entities, 90 days after the first date set for the meeting of creditors under 11 U.S.C. § 341(a). The debtors must provide notice of the bar date to all creditors on or before the first date set for the meeting of creditors."

[31] As the Petition Date was August 23, 2019.

[32] As the first date set for the meeting of creditors under 11 U.S.C. § 341(a) was October 15, 2019.

[33] Adversary Proceeding Number 19-03707, Doc. No. 76.

19.     On January 3, 2020, Credos filed the Claim, therein asserting an unsecured claim in the amount of $1,004,471.83 for "Services performed" on the Johnson Project, comprised of (1) the Invoices; (2) interest totaling $53,229.63; (3) attorneys' fees totaling $20,267.54; and (4) costs totaling $466.90. Among the documents attached to the Claim are: (1) a Summary of Debt Owed (the "***Summary***"); (2) the Invoices; and (3) Invoice #39 dated January 2, 2020 for the Daugherty Law Firm (the "***Fees and Costs Invoice***").

20.     On June 12, 2020, the Court entered the Confirmation Order.[34]  Pursuant to Article IV(F) of the Plan, the Trust was created and effective on the Effective Date.  Pursuant to the Confirmation Order, the Plan[35] and the Trust Agreement[36], the Liquidation Trustee was appointed to act as trustee of the Trust.

21.     On June 23, 2020, the Plan became effective (the "***Effective Date***").[37]  The Liquidation Trustee has since retained Omni's continued services.

22.     Credos has at all times been a party to the Johnson Adversary, but did not file a *Claimant Lien Summary* into the record of the Johnson Adversary.[38]  On August 13, 2020, as a result of its failure to respond in the Johnson Adversary[39], the Court entered an order into the record of the Johnson Adversary, *inter alia*, releasing Credos' Lien from the Retainage.[40]

---

[34] Case Number 19-34698, Doc. No. 575.

[35] *Id.*

[36] *Id*.

[37] Case Number 19-34698, Doc. No. 588.

[38] Adversary Proceeding Number 19-03707.

[39] *Id*. at Doc. No. 187.

[40] *Id.* at Doc. No. 231.

23.     On February 10, 2021, ROWC Energy Services, LLC filed that certain *Motion to Amend Order Disbursing Funds [Doc. 261] and Alternatively, Motion for New Trial*[41] (the "***Motion to Amend***"), therein asking the Court to amend its previously entered order disbursing the Retainage to clarify that the disbursement is in full and final satisfaction of all *lien* claims against Targa so as not to affect any non-lien claims.

24.     On March 1, 2021, Credos joined in the filing of that certain *Joint Report*, which pleading reported to the Court on any remaining issues to be resolved in the Johnson Adversary.[42]

25.     The next day, on March 2, 2021, Credos filed a limited joinder to the Motion to Amend.[43]

26.     On May 6, 2021, Credos filed a motion to remand the Johnson Adversary to the 238th Judicial District Court of Midland County, Texas.[44]  Credos also subsequently filed a reply to Targa's response to such remand request.[45]

27.     Prior to filing the instant objection, the Liquidation Trustee, through undersigned counsel attempted resolution of the issues presented herein with Credos' counsel, but such efforts were not fruitful.

## THE CLAIMS RECONCILIATION PROCESS

28.     While the Liquidation Trustee continues to review and reconcile claims for which he is responsible in order to administer the Trust, the Liquidation Trustee has identified the Claim

---

[41] *Id*. at Doc. No. 263.

[42] *Id*. at Doc. No. 267.

[43] *Id*. at Doc. No. 268.

[44] *Id*. at Doc. No. 285.

[45] *Id*. at Doc. No. 287.

as including interest, attorneys' fees and costs, to which Credos is not at least fully, if at all, entitled.

29.     Pursuant to Article VII(D) of the Plan, the deadline to file objections to Claims is "on or before the later of: (i) one hundred twenty (120) days after the Effective Date [October 21, 2020], or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims".  The Court has extended the initial October 21, 2020 deadline to file claim objections through October 28, 2021.[46]

## RELIEF REQUESTED

30.     By this Objection, the Liquidation Trustee respectfully requests that the Court enter an order pursuant to Section 502 of the Bankruptcy Code, Rule 3007 of the Bankruptcy Rules and the terms of the Plan, substantially in the same form as the Proposed Order, (1) disallowing and expunging the Claim in any amount beyond $930,507.76 (notwithstanding any interest, attorneys' fees and/or costs approved by the Court after considering the issues raised herein), (2) fixing any allowed claim as a Class 7 General Unsecured Claim, and (3) requiring Credos to report to the Liquidation Trustee and reduce the Claim by any and all sums received in satisfaction of the Claim after entry of any order allowing the Claim, in full or in part, until termination of the Trust.

## ARGUMENT

### A.  General

31.     Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed, unless a party in interest objects.[47]  A properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim under section 502(a)

---

[46] Case Number 19-34698, Doc. Nos. 661, 678, 710, 768, and 916.

[47] 11 U.S.C. § 502(a).

of the Bankruptcy Code.[48]  To receive the benefit of *prima facie* validity, however, a proof of claim must assert factual allegations which would entitle the claimant to a recovery.[49]

32.     Additionally, a claimant's proof of claim is entitled to the presumption of *prima facie* validity under Bankruptcy Rule 3001(f) only until an objecting party refutes at least one of the allegations that is essential to the claim's legal sufficiency.[50]  Once an allegation is refuted, "the burden shifts to the claimant to prove by a preponderance of the evidence."[51]  "The ultimate burden of proof always lies with the claimant."[52]

33.     Bankruptcy Rule 3007 instructs that "[a]n objection to the allowance of a claim and a notice of objection that substantially conforms to the appropriate Official Form shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing."[53]

34.     The Bankruptcy Code disallows a claim when "such claim is for unmatured interest."[54]

35.     The Bankruptcy Code further disallows a claim when it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other

---

[48] FED. R. BANKR. P. 3001(f).

[49] *In re Heritage Org., LLC*, 04-35574 (BJH), 2006 WL 6508477, at *8 (Bankr. N.D. Tex. Jan. 27, 2006).

[50] *See Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co., Ltd.)*, 837 F.2d 696, 698 (5th Cir. 1988); *In re Starnes*, 231 B.R. 903, 912 (N.D. Tex. 1998).

[51] *In re Fidelity Holding Co., Ltd.,* 837 F.2d at 698; *In re Congress, LLC*, 529 B.R. 213, 219 (Bankr. W.D. Tex. 2015); *see also Cavu/Rock Props. Project I, LLC v. Gold Star Constr., Inc. (In re Cavu/Rock Props. Project I, LLC)*, 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014).

[52] *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006).

[53] FED. R. BANKR. P. 3007(a) (alteration to original).

[54] 11 U.S.C. § 502(b)(2).

than because such claim is contingent or unmatured."[55] Describing the confines of analysis under

11 U.S.C. § 502(b), the Fifth Circuit, relying upon *Butner v. United States*, explained:

> The Supreme Court has held that the "applicable law" is state law: "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." As a result, "there is no reason why such [state law] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Our analysis of "applicable law" under § 502(b) is therefore an application of state law, unless Congress has stated otherwise.[56]

36.    Notably, the Agreement specifies that it is governed by Texas law.[57]

37.    Consequently, Credos is allowed the amounts asserted in the Claim to the extent

the Bankruptcy Code and Texas law permit.

**B.   Credos is not entitled to interest in the amount claimed, if at all**

38.    Although the Federal District Courts in Texas appear historically inconsistent in

their opinions on the topic, the Liquidation Trustee recognizes that at least one fairly recent opinion

issued by the Southern District in *Sharp Iron Group* noted that bankruptcy courts may award

prejudgment interest for claims they adjudicated, and Section 502(b)(2) of the Bankruptcy Code

does not exclude prepetition, prejudgment interest for a claim later liquidated or determined post-

petition.[58] However, even if the Court disregards the *Craft* approach (which leaves Credos' claim

---

[55] 11 U.S.C. § 502(b)(1).

[56] *Grossman v. Lothian Oil Inc.* (*In re Lothian Oil Inc.*), 650 F.3d 539, 543 (5th Cir. 2011) (quoting *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979)) (internal citations omitted).

[57] *See* Exhibit "D", pg. 9 of 11, § 18.1 (providing "This Subcontract shall be governed by the Laws of the State of Texas, without regard to choice of law principles.").

[58] *Sharp Iron Grp. v. Total E&S, Inc.*, 2020 U.S. Dist. LEXIS 249443, *19 (S.D. Tex. 2020) (citing *In re Transdetter HR, LLC*, 2017 Bankr. LEXIS 2285 at *23-24 (Bankr. N.D. Tex. 2017), *aff'd*, 596 B.R. 509 (N.D. Tex. 2019), *aff'd sub nom. Transdetter HR L.L.C. v. Zurich Am. Ins. Co.* (*In re Transdetter HR L.L.C.*), 949 F.3d 905 (5th Cir. 2020). *But see In re Craft*, 2005 Bankr. LEXIS 39, *10-11 (N.D. Tex. 2005) (reading *Johnson & Higgins* (as discussed *infra*) "as requiring the entry of a judgment on a claim as a condition precedent to entitlement to pre-judgment interest on the claim itself. Because the [creditor] had not obtained a judgment in its favor on the Guarantee Suit as of the Petition

for interest dead in the water), and opts for the *Sharp* approach, Credos is still not entitled to the interest it claims as exhibited by the below analysis.

39.     Texas permits contracting parties to agree by contract to non-usurious rates of interest on their contractual obligations.[59]  Where the parties opt to exercise such freedom, the terms of their contract govern, as opposed to any available statutory rates.[60]  Where the contract does not provide for interest, statutory rates apply.[61]

40.     In the Claim, Credos seeks interest accruing at 6% prior to the Petition Date, totaling $53,229.63, although no basis for such interest is specified.[62]

41.     The Texas Supreme Court has defined prejudgment interest as "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of the judgment."[63]  Significantly, the purpose of prejudgment interest is "not to punish the defendant."[64]  Prejudgment interest is determined according to the substantive law of the case.[65]  Texas recognizes two grounds for an award of

---

Date, the [creditor] was not entitled to pre-judgment interest at that moment in time, and because the Petition Date is the date of cleavage for determination of what the [creditor]'s claim against Debtors' estate comprises, the [creditor]'s claim cannot include as a component that which it was not entitled to on the Petition Date.") (alterations to original).

[59] *See e.g.*, *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 687-88 (Tex. Civ. App.—Fort Worth [2nd. Dist.] 1974).

[60] *See e.g., Pineda v. PMI Mortgage Ins. Co.*, 843 S.W.2d 660, 670-71 (Tex. App.—Corpus Christi [13th Dist.] 1992), writ denied per curiam, 851 S.W.2d 191 (Tex. 1993).

[61] *Meridien Hotels, Inc. v. LHO Fin. P'ship I., LP*, 255 S.W.3d 807, 823 (Tex. App.—Dallas [5th Dist.] 2008); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 319 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

[62] *See* Exhibit "A", pg. 4 of 21.

[63] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528 (Tex. 1998) (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W. 2d 549, 552 (Tex. 1985)).

[64] *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006) (citing *Cavnar*, 696 S.W.2d at 552).
[65] *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.2 (5th Cir. 1987); *Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 231 (5th Cir. 1972).

prejudgment interest: (1) enabling statute, and (2) general principles of equity.[66]   The former applies to judgments for wrongful death (Tex. Fin. Code Ann. § 304.102), personal injury (Tex. Fin. Code Ann. § 304.102), property damage (Tex. Fin. Code Ann. § 304.102), and condemnation cases (Tex. Fin. Code Ann. § 304.201), while the latter applies, under common law, to economic loss claims such as breach of contract.[67]

42.     The Agreement is void of any interest provision.   Where the controlling contract fails to specify a rate of interest, the 6% statutory rate allowed under Tex. Fin. Code Ann. § 302.002[68] is read into the agreement to become the maximum interest rate allowed on the transaction.[69]   The Liquidation Trustee can only infer from the last column on the Summary that this may be the statute which Credos applies.[70]   However, courts have refused to award interest under Tex. Fin. Code § 302.002 when the creditor never alleges entitlement to interest under the

---

[66] *Int'l Turbine Servs. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (citing *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d 507 at 528)); *Domel v. Birdwell*, 2014 Tex. App. LEXIS 9767 *31 (Tex. App.— Eastland [11th Dist.] 2014); *Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 132 (Tex. App.— Eastland [11th Dist.] 2014); *Bufkin v. Bufkin*, 259 S.W.3d 343, 357 (Tex. App.—Dallas [5th Dist.] 2008, pet. denied).

[67] *Int'l Turbine Servs*, 278 F.3d at 499-500 ("In Texas, statutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases" and where a claim, such as a breach of contract claim, "does not fall within the statutory provisions, the prejudgment interest award is governed by Texas common law." (citing *Johnson & Higgins*, 962 S.W.2d at 530; *Adams v. H & H Meat Prods., Inc*., 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi [13th Dist.] 2001)). *See also Domel*, 2014 Tex. App. LEXIS 9767 *31 (citing TEX. FIN. CODE ANN. §§ 302.002, 304.102, 304.201 (West 2006)); *Jones*, 438 S.W.3d at 132; *Lee v. Lee*, 47 S.W.3d 767, 799-800 (Tex. App.—Houston [14th Dist.] 2001).

[68] Tex. Fin. Code § 302.002 provides as follows:

> If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due. If an obligor has agreed to pay to a creditor any compensation that constitutes interest, the obligor is considered to have agreed on the rate produced by the amount of that interest, regardless of whether that rate is stated in the agreement.

[69] *All Seasons Window & Door Mfg. v. Red Dot Corp.*, 181 S.W.3d 490, 497 (Tex. App. – Texarkana [6th Dist.] 2005) (citing Tex. Fin. Code. § 302.002; *Broady v. Johnson*, 763 S.W.2d 832, 834 (Tex. App. -Texarkana [6th Dist.] 1988, no writ)). *See also Tubelite v. Risica & Sons, Inc.*, 819 S.W.2d 801, 805, (Tex. 1991).
[70] *See* Exhibit "A", pg. 4 of 21.

statute itself, despite the creditor's claim potentially falling within the purview of the statute.[71]

Credos did not allege Tex. Fin. Code Ann. § 302.002 as an avenue for recovery in the Claim but

merely indicates in the Summary that "Interest at 6% before date of filing" is due.[72]  Moreover,

the Fifth Circuit has determined that § 302.002 "expressly excludes prejudgment interest

awards."[73]  As such, Tex. Fin. Code Ann. § 302.002 is inapplicable to the Claim.

43.     Instead, when the interest rate is unspecified in a contract and no statute controls

the award thereof, prejudgment interest, *when awarded by the court*[74], should be calculated based,

under common law,[75] "on the statutory rate provided in Texas Finance Code section 304.003."[76]

---

[71] *In re Ali*, 2015 Bankr. LEXIS 3431, *10-11 (Bankr. W.D. Tex. 2015).

[72] *See* Exhibit "A", pg. 4 of 21.

[73] *Int'l Turbine Servs.*, 278 F.3d at 500 (citing *Lee*, 47 S.W.3d at 800).  The Liquidation Trustee notes that such statute is also inapplicable because the basis of the Claim is not a credit transaction.  Specifically: (1) Credos does not qualify as a "creditor" under Tex. Fin. Code § 301.002(a)(3) ("a person who loans money or otherwise extends credit.  The term does not include a judgment creditor."); and (2) KPE LP does not qualify as an "obligor" under Tex. Fin. Code § 301.002(a)(13) ("a person to whom money is loaned or credit is otherwise extended.  The term does not include: (A) a judgment debtor; or (B) a surety, guarantor, or similar person.").

[74] *See Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavoir Highrise, L.P.)*, 432 B.R. 583, 644 (Bankr. S.D. Tex. 2010) ("Texas courts have held that 'the decision to award prejudgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy in making this decision.'" (quoting *Citizens Nat. Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex. App.—Fort Worth 2004, no pet.))). *See also In re Endeavoir Highrise, L.P.*, 432 B.R. at 644 ("With respect to awarding pre-judgment interest on breach of contract actions, Texas courts have concluded that equity allows for such an award." (citing *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 24 (Tex. App.—Houston [1st Dist.] 1996, writ denied))); *Sharp Iron Grp.*, 2020 U.S. Dist. LEXIS 249443, *19 ("'Texas law plainly requires an equitable award of prejudgment interest to a prevailing plaintiff as a matter of course'…The trial court may exercise discretion to deny the award in 'exceptional circumstances.'" (quoting *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 F. App'x 253, 258 (5th Cir. 2017))) (alteration to original).

[75] *Johnson & Higgins*, 962 S.W.2d at 531-32 (The Texas Supreme Court harmonized the common law prejudgment interest accrual scheme with the Finance Code, and extended the statutory provisions, at least in part, to other claims not otherwise covered by contract or statute.  Per such holding, the prejudgment interest statutory framework should apply to all cases, not only those involving wrongful death, personal injury, and property damage).

[76] *Tenn. Gas Pipeline Co. v. Technip U.S. Corp.*, 2008 Tex. App LEXIS 6419, *67-68 (Tex. App. – Houston [1st Dist.] 2008) (citing Tex. Fin. Code § 304.003; *ExxonMobil Corp.*, 174 S.W.3d at 319). *See also Balfour Beatty Rail v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 460 (N.D. Tex. 2016) (citing *Int'l Turbine Servs., Inc.*, 278 F.3d at 499).

"Although section 304.003 expressly applies to post-judgment rates, pre-judgment interest is computed at the same statutory rate."[77]

44.     Tex. Fin. Code § 304.003(b) states "[o]n the 15th day of each month, the consumer credit commissioner shall determine the postjudgment interest rate to be applied to a money judgment rendered during the succeeding calendar month." Tex. Fin. Code § 304.003(c)(1) goes on to instruct "[t]he postjudgment interest rate is: the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation." That rate is published in the Texas Register by the Secretary of State. [78]

45.     As of the Petition Date[79], the judgment interest rate as determined by the consumer credit commissioner was 5.50%.[80]  Thus, at most, Credos is limited to prejudgment interest at the rate of 5.50% per annum, rather than 6%.  Under both the common law and the Texas Finance Code, prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date a defendant received written notice of a claim, or (2) the date suit is filed, and is computed as simple

---

[77] *Tenn. Gas Pipeline Co.*, 2008 Tex. App LEXIS 6419 at *68 (citing *Tips v. Hartland Developers, Inc.*, 961 S.W.2d 618, 624 (Tex. App.—San Antonio [4th Dist.] 1998, no pet.)). *See also* Tex. Fin. Code § 304.003(a); *In re Endeavoir Highrise, L.P.,* 432 B.R. at 645.

[78] *See* Tex. Fin. Code § 304.004 ("The consumer credit commissioner shall send to the secretary of state the postjudgment interest rate for publication, and the secretary shall publish the rate in the Texas Register.")

[79] Interest which may have accrued post-Petition Date is unavailable to Credos. *See* 11 U.S.C. § 502(b)(2); *Sharp Iron Grp.*, 2020 U.S. Dist. LEXIS 249443, *19 ("Section 502 of the Bankruptcy Code disallows claims for 'unmatured interest.' Under Section 502, '[g]enerally, where a debtor is insolvent, the Bankruptcy Code does not allow payment of post-petition interest on unsecured claims in a chapter 11 case.'" (quoting *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 644 (Bankr. S.D. Miss. 2010))) (internal citations omitted); 4 COLLIER ON BANKRUPTCY ¶ 502.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("As a result of section 502(b)'s disallowance of unmatured interest regardless of rate, a creditor generally cannot receive postpetition interest at a contractual post-default rate. Additionally, whether interest is considered to be matured or unmatured for the purpose of this section is to be determined without reference to any acceleration resulting from bankruptcy. Under long-standing law, the filing of a petition serves to accelerate the unpaid portion of the debt on the date of the petition. It does not, however, accelerate or allow the accrual of interest that is unmatured as of the date of the filing. Simply stated, the filing of a petition accelerates the principal amount of all unmatured claims against the debtor, but does not allow for payment of interest scheduled to mature after the date of the filing.") (internal citations omitted).

[80]     *See* "Judgment Rate Summary", *https://occc.texas.gov/sites/default/files/uploads/interest/judgement-rate-summary.20.pdf*  (last visited June 22, 2021).

interest without compounding.[81]   The Liquidation Trustee is unaware of any facts asserted in the Claim which establish the date KPE LP received written notice of balances outstanding on the Invoices.[82] Nevertheless, the Liquidation Trustee does note that pursuant to the record of the Johnson Adversary, on November 14, 2018, Credos filed suit against KPE LP in the Johnson Litigation, therein seeking to recover the $930,507.76 in labor provided for the Johnson Project.[83]

46.     The Liquidation Trustee submits that, only where the Court affirmatively decides to award prepetition, prejudgment interest on a claim it determined post-Petition Date, Credos is limited to the common law prejudgment interest allowed by Tex. Fin. Code § 304.003.

47.     Thus, should the Court determine that Credos is entitled to interest on the Invoices, prejudgment interest on any balance due on the Invoices would accrue at 5.50% per annum through August 23, 2019, from the earlier of: (1) 180 days after the date KPE LP received written notice of the Invoices' outstanding balance; or (2) November 14, 2018, when Credos filed suit against KPE in the Johnson Litigation.

**C.  Credos has not articulated a legal basis for the attorney's fees and costs claimed, nor has it demonstrated the reasonableness of such attorney's fees.**

48.     While the Agreement is silent with regard to attorney's fees or costs in favor of Credos, Credos asserts in the Claim that it is entitled to $20,267.54 in attorneys' fees and $466.90 in costs.[84] Significantly, Credos makes no mention of the legal basis for such amounts and, despite

---

[81] *See* Tex. Fin. Code Ann. § 304.104; *Johnson & Higgins*, 962 S.W.2d at 531; *Balfour Beatty Rail*, 173 F. Supp. 3d at 461; *In re Endeavoir Highrise, L.P.,* 432 B.R. at 645.

[82] *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("A defendant has notice of a claim for purposes of prejudgment interest only if the plaintiff's written notice communicates that the plaintiff is claiming a right to compensation and provides enough information that the defendant could plausibly settle the claim without incurring interest." (citing *Johnson & Higgins*, 962 S.W.2d at 531; *Owens-Ill., Inc. v. Estate of Burt*, 897 S.W.2d 765, 769 (Tex. 1995))).

[83] Adversary Proceeding Number 19-03707, Doc. No. 285, Exhibit 1.
[84] *See* Exhibit "A", pgs. 4, 21 of 21.

the Liquidation Trustee's repeated informal requests for such basis, the Liquidation Trustee is left to speculate.

49.     Texas follows the American Rule, whereby a litigant may not recover attorneys' fees unless specifically provided for by contract or statute.[85]

50.     The Agreement specifically expresses:

> In the event [Credos] defaults in the performance of any of the terms, covenants, agreements or conditions of this Agreement, and [KPE LP] seeks to enforce all or any part of this Agreement, [Credos] agrees to pay [KPE LP's] reasonable attorney's fees, whether suit is actually filed or not.[86]

However, nothing in the Agreement allocates the same remedy to Credos in the event KPE LP defaults upon the Agreement.  A court's "'primary objective' in construing contracts is to give effect to the written expression of the parties' intent."[87] Moreover, a court "may neither rewrite the parties' contract nor add to its language."[88] The Parties specifically providing KPE LP the ability to recover attorney's fees, but remaining silent as to Credos' recovery of same, evidences that the Parties did not intend for Credos to recover such amounts.

51.     The Liquidation Trustee reiterates that the Claim is silent as to which, if any, statute Credos relies upon for attorney's fees and costs.  Even *assuming arguendo* that there exists a statutory basis for Credos to recoup any attorney's fees and costs, which the Liquidation Trustee does not concede, the Court would have to determine that such amounts are reasonable under such statute.  Pursuant to controlling jurisprudence, "Texas law governs the reasonableness of fees

---

[85] *Vast Constr., LLC v. CTC Contrs., LLC*, 526 S.W.3d 709, 727 (Tex. App. – Houston [14th Dist.] 2017); *Brainard*, 216 S.W.3d at 817.

[86] *See* Exhibit "D", pg. 10 of 11, § 20.1 (alteration to original).

[87] *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W. 3d 882, 888 (Tex. 2019).

[88] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 162 (Tex. 2003).

awarded where Texas law governs the rule of decision."[89] An award of reasonable attorneys' fees is assessed by utilizing the following factors set forth by the Texas Supreme Court in *Arthur Anderson & Co. v. Perry Equipment Corp.*:

1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[90]

52.    For these reasons, the Liquidation Trustee submits that Credos may not recover attorney's fees and costs unless it first identifies an applicable statutory basis for such, and the Court thereafter determines that such fees are reasonable under the *Arthur Anderson* factors.

**D. Credos Should Report, Until the Termination of the Trust, Any Future Sums Received.**

53.    Notably, Credos has a continuing duty to amend the Claim to reflect an accurate outstanding claim amount.[91]

---

[89] *Schwertner Backhoe Servs. v. Kirk* (*In re Kirk*), 525 B.R. 325, 336 (Bankr. W.D. Tex. 2015) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). *See also Vill. Constrs., Inc.*, 2011 U.S. Dist. LEXIS 74107 *2.

[90] *In re Kirk*, 525 B.R. at 336 (quoting *Arthur Anderson & Co.*, 945 S.W. 2d at 818 (quoting Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art X, § 9))).

[91] *In re Hence*, 2007 Bankr. LEXIS 4156 *19 n. 8 (Bankr. S.D. Tex. 2007) ("it is not this Court's responsibility--or within this Court's power--to amend a proof of claim by disregarding a portion of the claim. Rather, it is the claimant's duty to amend in order to ensure accuracy." (citing *Anderson 2000, Inc. v. Greenwich Ins. Co.* (*In re Andersen 2000,*

54.     In light of the representations made in the remand pleadings Credos filed in the Johnson Adversary, from which the Liquidation Trustee infers Credos' intent to pursue its claims against Targa related to the Claim, and as with all Johnson Creditors, the Liquidation Trustee requests that any order entered by the Court relative to the Claim include a continuing obligation for Credos to, until the Trust has been terminated, (1) notify the Liquidation Trustee within ten (10) business days of receipt of any amounts in satisfaction of the Claim, which amount(s) so received shall further reduce the Claim; and (2) after providing such notice and at the Liquidation Trustee's request, file a joint Stipulation with the Liquidation Trustee into the record of the Bankruptcy Case as soon as is reasonably practicable reducing the Claim in the amount(s) received.

**E.  Any Claim Allowed Should be Classified as a General Unsecured Claim**

55.     Class 4 of the Plan is comprised of the "Allowed Johnson Creditor Claims", the claims[92] against KPE LP of "those certain Holders of Claims . . . as a result of the Johnson Project and related Johnson Project Litigation that have filed Liens against the Johnson Project"[93]

56.     To the extent Credos is a Johnson Creditor, the Claim constitutes a Johnson Creditor Claim under the Plan.

57.     Class 4 of the Plan provides the following treatment for Holders of Allowed Johnson Creditor Claims:

> (i) Upon (a) the settlement of the Johnson Project Litigation or (b) entry of a final order in the Johnson Project Litigation, the Johnson Interpleaded Funds will be distributed to Holders of Allowed

---

*Inc.*), 2007 Bankr. LEXIS 3720 * 15 (Bankr. N.D. Ga. 2007) ("In this case, if Greenwich's actual loss turns out to be less than its filed claim, it would stand to reason that Greenwich would have a similar obligation to amend its proof of claim to reflect the amount of its actual loss . . .")))

[92] As that term is defined in the Plan.

[93] The Plan, Article I(A) ("Johnson Creditors"; "Johnson Creditor Claims"); Article III(B); Article III(C)(4).

Johnson Creditor Claims, Targa Pipeline, or the KP Engineering Liquidation Trust, pursuant to the terms of such settlement or final order. The Plan shall not alter any of the liens, claims, or rights, if any, of any of the Johnson Creditors or other interested Entities (x) as to the Johnson Interpleaded Funds or (y) against any non-Debtor party or its property.

(ii) To the extent any Allowed Johnson Creditor Claim remains unsatisfied after payment of the foregoing, such Holder of the Allowed Johnson Creditor Claim shall be a Liquidation Trust Beneficiary of the KP Engineering Liquidation Trust and be entitled to an Allowed General Unsecured Claim in Class 7 in the amount of the deficiency.[94]

58.    Given the aforementioned Plan language and the Disbursement Order, to the extent any portion of the Claim is allowed, the Liquidation trustee requests that the Court specifically classify such allowed claim as a Class 7 General Unsecured Claim.

59.    The Liquidation Trustee respectfully asserts that the relief requested herein is solely in aid of and in furtherance of his duties and obligations to administer the Trust.

## RESERVATION OF RIGHTS

60.    As part of the Liquidation Trustee's investigation into claims asserted by creditors against the Debtors' estate, the Liquidation Trustee may determine that additional grounds exist to object to certain claims or additional claims are objectionable based on the grounds asserted herein, therefore, no creditor (1) should construe this pleading as exhaustive or as indication that a claim not addressed herein will not be challenged or (2) that the grounds set forth herein are the Liquidation Trustee's only applicable grounds for objecting to the Claim at issue in this pleading. The Liquidation Trustee reserves the right to further object to the Claim and to other claims filed in the Bankruptcy Case on the grounds set forth herein or on additional grounds, as applicable.

---

[94] The Plan, Article III(C)(4).

61.     In the event that the Claim is not disallowed and expunged on the grounds asserted herein, the Liquidation Trustee hereby reserves his rights to object to the Claim on any other grounds.  Additionally, the Liquidation Trustee expressly reserves the right to amend, modify, or supplement the objections asserted herein and to file additional objections to proofs of claim or any other claims that may be asserted against the Debtors' estates.

62.     Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity or such Debtor entity's estate; (b) a waiver of any party's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Liquidation Trustee's rights under the Bankruptcy Code or any other applicable law.

**NOTICE**

63.     The Liquidation Trustee has furnished notice of this Objection pursuant to Article VII(D) of the Plan: "(a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the [Claim] or other representative identified on the [Claim] or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has Filed a notice of appearance in the Bankruptcy Cases on behalf of the Holder of a Claim."  Specifically, the Liquidation Trustee has served a copy of this Objection, by first class mail, postage prepaid, upon those as set forth on the service list attached hereto as **Exhibit "F."**

64.     The Liquidation Trustee respectfully asserts that notice of the relief requested in this Objection and the Objection itself has been given, pursuant to Rule 3007 of the Bankruptcy Rules, by first-class mail to: (a) the Debtors; and (b) the claimant, addressed to the person most recently designated on the claimant's original or amended proof of claim as the person to receive notices, at the address so indicated.  The Liquidation Trustee respectfully submits that such notice is sufficient and proper under the circumstances and that no other or further notice is required.

**WHEREFORE**, based upon the foregoing, the Liquidation Trustee requests that the Court (i) sustain this Objection; (ii) enter the Proposed Order pursuant to Section 502(b) of the Bankruptcy Code, Rule 3007 of the Bankruptcy Rules and the terms of the Plan, (1) disallowing and expunging the Claim in any amount beyond $930,507.76, notwithstanding any interest, attorneys' fees and/or costs approved by the Court after considering the issues raised herein; (2) fixing the Claim as a Class 7 General Unsecured Claim; (3) requiring Credos, from entry of any order through termination of the Trust, to notify the Liquidation Trustee within ten (10) business days of receipt of any amounts in satisfaction of the Claim, which amount(s) so received shall further reduce the Claim and, after providing such notice and at the Liquidation Trustee's request, file a joint Stipulation with the Liquidation Trustee into the record of the Bankruptcy Case as soon as is reasonably practicable reducing the Claim in the amount(s) received, and (4) grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

Dated: August 27, 2021

By: */s/ Brooke W. Altazan*_____

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

Brooke W. Altazan (TX Bar # 24101002)

baltazan@stewartrobbins.com
Paul Douglas Stewart, Jr. (La. Bar # 24661,
admitted to SDTX)
dstewart@stewartrobbins.com
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

**Attorneys for Michael D. Warner, Liquidation
Trustee**

### Certificate of Service

I HEREBY CERTIFY that, on this 27th day of August 2021, a true and correct copy of the above and foregoing pleading, along with all exhibits, was caused to be served upon all parties that are registered to receive electronic service through the court's ECF notice system in the above case, via electronic mail (e-mail) where indicated, and by placing same in the United States mail, postage prepaid and properly addressed to each party listed on the service list attached hereto as Exhibit "F."

at Baton Rouge, Louisiana, this 27th day of August 2021

*/s/ Brooke W. Altazan*
Brooke W. Altazan